276 F.3d 489 (9th Cir. 2002)
 ROSS B. LINNEEN, HUSBAND; KIM ANN LINNEEN, WIFE, PLAINTIFFS-APPELLANTS,
v.
GILA RIVER INDIAN COMMUNITY; MARY THOMAS, GOVERNOR OF THE GILA RIVER INDIAN COMMUNITY; RALPH ANDREWS, GILA RIVER TRIBAL RANGER, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY; UNITED STATESOF AMERICA; INTERIOR, DEPARTMENTOF; BUDDY SHAPP, BIA OFFICER, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; INDIAN AFFAIRS, BUREAU OF, DEFENDANTS-APPELLEES.
 No. 00-15120
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted September 13, 2001
Filed January 7, 2002
 
 Counsel James P. Mueller, Douglas V. Drury, Mueller & Drury, Scottsdale, Arizona, Tom Rawles, Linda S. Rawles, Phoenix, Arizona, for the plaintiffs-appellants.
 Scott H. Gan, Tom R. Clark, Mesch, Clark & Rothschild, Tucson, Arizona, Robert Alan Hershey, Tucson, Arizona, Arthur G. Garcia, Ausa, Phoenix, Arizona, for the defendants-appelles.
 Appeal from the United States District Court for the District of Arizona Roger G. Strand, District Judge, Presiding D.C. No. CV-97-02708-RGS
 Before: Henry A. Politz,* William A. Fletcher, and Raymond C. Fisher, Circuit Judges.
 
 William A. Fletcher, Circuit Judges
 
 1
 Plaintiffs Ross and Kim Linneen filed a complaint in district court seeking monetary damages under 42 U.S.C.§§ 1983, the United States Constitution, Arizona state law, and the bylaws of the Gila River Indian Community, based on allegations that a Gila ranger unlawfully detained and threatened them during an encounter on Gila land. The district court dismissed the complaint as to the Gila River Indian Community, and as to Mary Thomas, Governor of the Community, and Ralph Andrews, Gila River Tribal Ranger, in their official capacities, based on tribal sovereign immunity. We have jurisdiction under 28 U.S.C. §§ 1291 and affirm.
 
 I.
 
 2
 The Linneens drove into the desert south of Chandler, Arizona on January 1, 1996, to take their dogs for a walk. The location they chose was on property belonging to the Gila River Indian Community ("Community"). Buddy Shapp of the Bureau of Indian Affairs spotted them, and Ralph Andrews, a ranger for the Community, was dispatched to investigate.
 
 
 3
 The Linneens allege that the following events took place: When Andrews arrived, he jumped out of his truck, drew his gun, and crouched behind the truck door. He ordered Ross to turn around and put his arms on his head. He searched the Linneens and their car. He kept the Linneens in custody for three hours, during which time he told them that they were guilty of various offenses that would result in jail time; told them that their possessions would be impounded and their dogs destroyed; held a gun to their heads; complained about injustices suffered by Native Americans at the hands of Caucasians; and lectured them on religious doctrine. Andrews finally released the Linneens after citing them for criminal trespass. The charges against the Linneens were later dismissed.
 
 
 4
 The Linneens filed a complaint in federal district court, naming as defendants the Gila Community, Mary Thomas, Andrews, the United States, the Department of Interior, the Bureau of Indian Affairs, and Shapp. The complaint alleged six federal and state law causes of action, for which the Linneens sought compensatory damages of $8 million, in addition to costs and attorneys' fees.
 
 
 5
 The district court held that it lacked subject matter jurisdiction for the claims against the Community, and for the claims against Thomas and Andrews in their official capacities, because of tribal sovereign immunity. The court held further that it lacked jurisdiction over Andrews, to the extent he was sued in his individual capacity, because the Linneens had not exhausted their tribal remedies. The court dismissed the claims against the United States based on failure to comply with the Federal Tort Claims Act.
 
 
 6
 Attorneys for the tribe and the Linneens filed a joint motion and stipulation for entry of final judgment in district court pursuant to Federal Rule of Civil Procedure 54. Pursuant to the stipulation, the district court entered a final judgment granting defendants' motion to dismiss the complaint as to the Community, and as to Thomas and Andrews in their official capacities. The Linneens timely appealed this judgment.
 
 II.
 
 7
 We review de novo the district court's conclusion that it lacks subject matter jurisdiction. Wilson v. A.H. Belo Corp., 87 F.3d 393, 396 (9th Cir. 1996). We also review de novo questions of tribal sovereign immunity. United States v. James, 980 F.2d 1314, 1319 (9th Cir. 1992).
 
 III.
 
 8
 The only issue raised in this appeal is whether the district court correctly held that tribal sovereign immunity bars the Linneens' claims against the Community, and against Thomas and Andrews in their official capacities. Because the Linneens' suit against the Community and against Thomas and Andrews in their official capacities is a suit against the tribe, it is barred by tribal sovereign immunity unless that immunity has been abrogated or waived.
 
 
 9
 "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978). "This immunity extends to tribal officials when acting in their official capacity and within the scope of their authority." United States v. Oregon, 657 F.2d 1009, 1013 n.8 (9th Cir. 1981). In Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 754 (1998), the Supreme Court recently precluded a company from suing an Indian tribe in state court based on a commercial obligation, explaining that "[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity."
 
 
 10
 Here, the suit arises from defendant Andrews' alleged misconduct during his official duties as a tribal ranger on the Community's land. Congress has not abrogated tribal sovereign immunity for such acts committed on tribal land by a tribal officer.
 
 
 11
 Further, the Linneens have not shown that the Community has waived its immunity. See Pan American Co. v. Sycuan Band of Mission Indians, 884 F.2d 416, 419 (9th Cir. 1989) (stating the "fundamental principle that tribal sovereign immunity remains intact unless surrendered in express and unequivocal terms"). They contend that the Gila Corporate Charter contains such a waiver, but we disagree. The charter provides:
 
 
 12
 The Community . . . shall have the following corporate powers . . . : . . . To sue and to be sued in courts of competent jurisdiction within the United States; but the grant or exercise of such power to sue and be sued shall not be deemed a consent by the said Community or by the United States to the levy of any judgment, lien or attachment upon the property of the Community other than income or chattels specially pledged or assigned.
 
 
 13
 (Emphasis added.). Such "sue and be sued" clauses waive immunity with respect to a tribe's corporate activities, but not with respect to its governmental activities. See Ute Distribution Corp. v. Ute Indian Tribe, 149 F.3d 1260, 1268 (10th Cir. 1998); S. Unique, Ltd. v. Gila River Pima-Maricopa Indian Community, 674 P.2d 1376, 1382-83 (Ariz. Ct. App. 1983). The Indian Reorganization Act, 25 U.S.C. §§ 476, authorizes Indian tribes to organize as a constitutional entity, and §§ 477 of the Act authorizes organization of a corporate entity. Ramey Constr. Co. v. Apache Tribe of Mescalero Reservation, 673 F.2d 315, 320 (10th Cir. 1982). Most courts that have considered the issue have recognized the distinctness of these two entities. Id. (citing numerous cases). The "sue and be sued" clause in the Community's corporate charter in no way affects the sovereign immunity of the Community as a constitutional, or governmental, entity. We find no waiver here because the alleged actions that form the basis of this suit are clearly governmental rather than corporate in nature.
 
 
 14
 We therefore AFFIRM the district court's dismissal.
 
 
 
 Notes:
 
 
 *
 Honorable Henry A. Politz, Senior Circuit Judge for the Fifth Circuit, sitting by designation.