ALARCÓN, Circuit Judge:
 

 Appellants appeal from the district court’s order dismissing their complaint for lack of subject matter jurisdiction. Appellants are individuals who unsuccessfully petitioned the Table Mountain Tribal Council for admission to the Table Mountain Ranchería, an Indian tribe. Their complaint sought an order compelling the Table Mountain Ranchería to admit them as members. The district court concluded that it lacked subject matter jurisdiction over Appellants’ claims because this case was indistinguishable from those in which tribal immunity precludes federal court jurisdiction over tribal membership disputes. In so holding, the district court rejected Appellants’ attempts to establish subject matter jurisdiction.
 

 Appellants contend that this case is distinguishable from those in which tribal immunity precludes jurisdiction. They claim that immunity does not apply because their claims do not involve tribal membership disputes. Instead, they purport to assert a collateral attack on the judgment in
 
 Table Mountain Ranchería Association et al. v. Jamies Watt, Secretary of the Interior,
 
 No. C-80-4595-MHP. Also, they argue that the district court had subject matter jurisdiction by virtue of its ancillary authority to enforce the
 
 Watt
 
 settlement agreement, and that the tribal Appel-lees’ immunity is waived because of their participation in
 
 Watt.
 
 In passing, Appellants assert that the district court had jurisdiction pursuant to 28 U.S.C. § 1346.
 

 We have appellate jurisdiction over this timely appeal from the district court’s final judgment pursuant to 28 U.S.C. § 1291, and affirm the judgment of dismissal. The district court properly concluded that it lacked subject matter jurisdiction to order Appellees to admit Appellants as members of the Table Mountain Ranchería. We do not reach the issue of whether tribal immunity defeats Appellants’ claims. Appellants’ subject matter arguments suffer from a more fundamental flaw: Appellants have failed to establish that the district court has subject matter jurisdiction over their causes of action even if the Table Mountain Ranchería is not immune from suit.
 

 I
 

 In or around 1916, the United States purchased a parcel of land in Fresno County, California from private individuals, and thereafter held the land in trust for the Table Mountain Band of Indians. The land became known as the Table Mountain Ranchería (“TMR”), and was considered an Indian Reservation and “Indian Country” within the meaning of 18 U.S.C. § 1151.
 
 [1]
 
 Ranchería residents were
 
 *1012
 
 recognized as Indians for purposes of federal law.
 

 On August 18, 1958, Congress enacted the California Ranchería Act, Pub.L. No. 85-671, 72 Stat. 619 (1958). The Ranche-ría Act,
 
 inter alia,
 
 authorized an exchange of title to Ranchería assets, and a promise that the Bureau of Indian Affairs (“BIA”) would continue to provide essential benefits, such as irrigation and educational programs to Ranchería residents, if, in return, the TMR voluntarily relinquished its trust status, and the TMR’s residents forfeited their Indian status.
 

 A proposed plan for distribution of Ranchería land, drafted pursuant to the Ranchería Act, divided the Ranchería into parcels, most of which were to be conveyed to individual Ranchería residents. The remaining parcels were earmarked for the Ranchería water system, and were to be conveyed to a legal entity formed solely to receive the remaining parcels. Sometime after July 31, 1959, the proposed plan was approved. As a result, the Ranchería assets were distributed to the Table Mountain Ranchería Association (“TMRA”)
 
 [2]
 
 and individual residents. In addition, the Ranchería lost its trust status, and its residents lost their Indian status.
 

 In 1980, the TMRA, several individuals who had forfeited their Indian status in return for Ranchería assets, along with several dependent members of their families, filed a putative class action, entitled
 
 Table Mountain Ranchería Association et al. u James Watt, Secretary of the Interi- or, et al,
 
 No. C-80-4595-MHP
 
 (“Watt
 
 ”), in the United States District Court for the Northern District of California. The
 
 Watt
 
 complaint named Clarence Jones, Lester Burrough, E.B. Barnes, Lewis Barnes, and William Walker as plaintiffs,
 
 [3]
 
 and the Secretary of the Interior, the Secretary of Health and Human Services, and the United States, as defendants.
 

 The named plaintiffs in the
 
 Watt
 
 action sought to certify two classes:
 

 persons named in the distribution plan as distributees of [TMR] assets ..., or thefir] Indian heir(s), assign(s), executor(s), administrator(s), or successor(s) in interest ... who, by reason of having been named as distributees ... were ... considered by the [federal] government ... to have lost their status as Indians under [federal law];
 

 [[Image here]]
 

 all Indian persons, other than distribu-tees, who were named in the [TMR] distribution plan as dependents of dis-tributees, and who, for that reason, were ... deemed by the United States ... to have lost their status as Indians under [federal law].
 

 On April 11, 1983, the district court certified both classes.
 

 The
 
 Watt
 
 plaintiffs alleged that the defendants failed to inform the Ranchería residents who approved the distribution
 
 *1013
 
 plan of “the obligations of the United States under the Rancheria Act, the relative advantages and disadvantages of accepting termination, the options available to them under the Rancheria Act and the legal consequences of exercising those options.” The
 
 Watt
 
 complaint further alleged that the
 
 Watt
 
 defendants “eaus[ed] plaintiff dependents to be ineligible to receive
 
 federal
 
 services provided exclusively
 
 to
 
 Indians, and to enjoy other federal rights available to Indians, including such rights as having land held in trust for them.” (Emphasis added).
 

 The
 
 Watt
 
 complaint sought rescission of the distribution plan and a declaration “that the purported termination of the [plaintiffs’] Indian status ... and the trust ... status of the lands of the Table Mountain Rancheria ... is void ... and that plaintiff distributees [and dependents] have been and remain eligible to participate in all
 
 federal programs and benefits provided to Indians because of their status as Indians.”
 
 (Emphasis added).
 

 On March 28, 1983, the
 
 Watt
 
 parties stipulated to a settlement and judgment. The stipulation provided that the named plaintiffs
 

 represent the class of persons certified as consisting of all persons named in the distribution plan of the Table Mountain Rancheria as distributees of the assets of said Rancheria, or the Indian heir(s), assign(s), executor(s), administrator(s), or successor(s) in interest thereof
 
 who,
 
 by reason of having participated in the distribution of the assets of said Ranehe-ria at any time
 
 have been considered, by the government of the United States or any other governmental entity to have lost their status as Indians under the laws of the United States.
 

 (Emphasis added). The stipulation also required the Secretary of the Interior to list the Table Mountain Band of Indians as an Indian tribal entity under 25 C.F.R. Part 83.6(b), and permit any class member or successor who received title to an asset because of the 1959 distribution to “elect to restore any such interest [to] federal trust status” by conveying it to the United States for the benefit of the tribe. The
 
 Watt
 
 settlement further stated that “[t]he status of the named individual plaintiffs and class members as Indians under the laws of the United States is confirmed.” The settlement provided that plaintiffs would dismiss their damages claims against the Secretary of the Interior and the United States.
 

 The district court approved the stipulated settlement on June 16, 1983. The
 
 Watt
 
 court retained jurisdiction to enforce the judgment for one year after its date of entry.
 

 On December 14, 1983, the Secretary of the Interior published a notice in the Federal Register, pursuant to 25 C.F.R. § 83.6(b), designating the TMR as a federally recognized “Indian tribal entity” eligible to receive services from the BIA. Indian Tribal Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 48 Fed. Reg. 56,-
 
 862-02,
 
 56,866 (Dec. 14,1983).
 
 [4]
 

 
 *1014
 
 Sometime thereafter, the TMR enacted a constitution and established TMR membership requirements. Section 1 of the constitution stated:
 

 The membership of the TMR shall consist of the following:
 

 (a) All persons of California Indian descent who were listed as distributees or dependent members of distributees in the plan for the distribution of the assets of the Table Mountain Ranchería as approved by the Commissioner of Indian Affairs on July 16, 1959.
 

 (b) All lineal descendants of persons named on the base roll provided such descendants possess at least one-quarter (1/4) degree California Indian blood, regardless of whether the ancestor through whom eligibility is claimed is living or deceased.
 

 The Table Mountain Tribal Council interprets and applies these provisions.
 

 After the adoption of the tribal constitution, the plaintiffs in this action unsuccessfully petitioned the tribal council for admission to the Table Mountain Ranchería. They alleged entitlement to membership because they “are direct descendants of and/or dependents of or off-spring of dependents of distributees ... of the 1958 distribution plan” and have the requisite degree of California Indian blood.
 

 II
 

 On January 6, 2005, Plaintiffe/Appellants filed the instant action in the United States District Court for the Northern District of California, the same court in which the
 
 Watt
 
 action was filed. They named as defendants the TMR,
 
 [5]
 
 several members of the Table Mountain Tribal Council, a former Table Mountain Tribal Council chairperson, several current tribal members who served as representatives of the plaintiff classes in
 
 Watt,
 
 the Secretary of the Interior, and the United States.
 

 The complaint in this action (“2005 complaint”) alleges a claim for breach of the covenant of good faith and fair dealing against all Appellees because of their purported failure to insure that Appellants “were treated the same as the named parties in
 
 [Wait
 
 ].” The 2005 complaint seeks damages for this particular breach against the non-government defendants, and declaratory and injunctive relief against the United States and the Secretary of the Department of the Interior. The 2005 complaint also alleges a claim for breach of fiduciary duty against all non-government Appellees, who allegedly participated in an ongoing conspiracy to refuse appellants membership in the tribe. Appellants allege that the duty arose by virtue of the Appellees’ role as
 
 Watt
 
 class representatives. The 2005 complaint alleges that this particular breach entitled Appellants to “any and all benefits provided by the [TMR] to any and all members ... which would include ... casino profits.”
 

 Additionally, the 2005 complaint prays for an injunction requiring the tribe to recognize Appellants as members of the TMR; declaratory relief that Appellants are members of the TMR and equally entitled to benefits “from the federal government and [TMR]” as are other members of the tribe; and “a full accounting of any and all benefits bestowed by the federal government Defendants to Table Mountain Ranchería and/or any of its members from 1983 to the present.” The 2005 complaint also seeks an order compelling the United States and the Secretary of the Interior to
 
 *1015
 
 order the TMR to admit the plaintiffs as members.
 

 On July 27, 2005, the district court granted in part and denied in part the Appellees’ motion to dismiss for lack of jurisdiction. It concluded that “neither an act of Congress nor the stipulated judgment in the
 
 Watt
 
 action provides any basis for [the district court’s] exercise of jurisdiction over tribal membership determinations.” In particular, the district court concluded that the Indian Gaming Regulatory Act, 25 U.S.C. § 2701
 
 et seq.,
 
 did not confer subject matter jurisdiction to determine whether the tribe or its officers “acted wrongfully in denying [Appellants’] membership applications.” Also, the district court distinguished Appellants’ claims from those which attack a judgment collaterally, noting that Appellants “have not elected to plead their case on [a collateral attack] theory.”
 

 Next, the district court noted that the relief sought against the government defendants “appears to be premised upon the fact that the Secretary of the Interior breached a duty owed to [Appellants] by failing to order the Tribe to admit them as members.” The district court concluded that Appellants “failed to cite any federal statute or treaty” authorizing the government defendants to force the TMR or its officers to admit any particular individual as a member. Therefore, it concluded that it lacked subject matter jurisdiction over the breach of duty claims brought against the government defendants.
 

 Finally, the district court addressed the question of whether Appellants could “maintain a claim for declaratory and in-junctive relief under the APA” in order to review the Secretary of the Interior’s “failure to act upon a petition to admit [Appellants] as members of [the TMR].” The district court stated that the APA “gives rise to federal question jurisdiction,” but only for claims brought against a federal agency, and not claims brought against the United States. It determined that the 2005 complaint failed “to state a claim for relief under the APA.” As a result, all claims against the tribal defendants, the
 
 Watt
 
 plaintiffs, and the United States were dismissed with prejudice. The APA claim against the Secretary of the Interior was “dismissed without prejudice” with leave to amend. No amendment was filed. The complaint was dismissed in its entirety on December 6, 2005.
 

 Ill
 

 Appellants contend that the district court erred in ruling that it lacked subject matter jurisdiction over their claims. We review a dismissal for lack of subject matter jurisdiction
 
 de novo. Lewis v. Norton,
 
 424 F.3d 959, 961 (9th Cir.2005).
 

 A
 

 As a preliminary matter, we address Appellants’ attempt to distinguish this ease from those in which tribal immunity precludes federal court jurisdiction over tribal membership disputes.
 
 See, e.g., Opening Br.
 
 at 51 (“[T]he tribe does not have immunity ... since it waived that immunity in its pursuit as a party plaintiff in
 
 [Watt
 
 ].”). We do not reach this contention, because even if it had merit, it would not mandate reversal. Appellees contend that the district court lacked subject matter jurisdiction because “Appellants’ complaint contains no federal claim for relief.”
 
 Tribal Appellees’ Resp. Br.
 
 at 11. We agree and affirm on this ground.
 

 Sovereign immunity limits a federal court’s subject matter jurisdiction over actions brought against a sovereign.
 
 Vacek v. United States Postal Serv.,
 
 447 F.3d 1248, 1250 (9th Cir.2006). Similarly, tribal immunity precludes subject matter jurisdiction in an action against an Indian
 
 *1016
 
 tribe.
 
 Lewis,
 
 424 F.3d at 961. Yet the absence of immunity does not establish the presence of subject matter jurisdiction. Rather, the cornerstone of federal subject matter jurisdiction is statutory authorization.
 
 See, e.g., Exxon Mobil Corp. v. Allapattah Servs., 54
 
 5 U.S. 546, 553, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) (“[Federal courts have no jurisdiction without statutory authorization.”).
 

 To confer subject matter jurisdiction in an action against a sovereign, in addition to a waiver of sovereign immunity, there must be statutory authority vesting a district court with subject matter jurisdiction.
 
 See, e.g., Arford v. United States,
 
 934 F.2d 229, 231 (9th Cir.1991) (explaining that in order to maintain an action against the United States, there must be both “statutory authority granting subject matter jurisdiction” and “a waiver of sovereign immunity”). Therefore, to establish that the district court had subject matter jurisdiction over their claims, Appellants cannot rest on the assertion that principles of immunity do not apply. Rather, Appellants must establish some form of statutory authorization for their claims.
 
 See Vacek,
 
 447 F.3d at 1250 (quoting
 
 Kokkonen v. Guardian Life Ins. Co. of Am.,
 
 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)) (explaining that the party asserting jurisdiction has the burden of establishing jurisdiction).
 

 The district court described federal courts’ hesitation to intrude upon matters of tribal membership as a “straightforward application of the doctrine of sovereign immunity.” However, Appellants’ case is more infirm than those in which we have found a lack of subject matter jurisdiction as a result of tribal immunity. Indeed, the leading cases on federal jurisdiction over tribal matters arise in the context of claims for which a federal court has federal question jurisdiction.
 
 See Donovan v. Coeur d’Alene Tribal Farm,
 
 751 F.2d 1113, 1116 (9th Cir.1985) (explaining that respect for tribal self-government exempts “purely intramural matters such as conditions of tribal membership, inheritance rules, and domestic relations from the general rule that otherwise applicable federal statutes apply to Indian tribes”);
 
 Santa Clara Pueblo v. Martinez,
 
 436 U.S. 49, 51-52, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (declining to read Title I of the Indian Civil Rights Act of 1968 (ICRA), 25 U.S.C. §§ 1301-1303, to authorize a cause of action in federal court for declaratory and injunctive relief to enforce the ICRA’s substantive provisions). Tribal immunity in those cases precluded jurisdiction even though the claims at issue implicated federal statutes. As explained below, Appellants’ arguments fail regardless of whether tribal immunity applies.
 
 [6]
 

 B
 

 Appellants first contend that the district court mistakenly analyzed their claims as membership disputes beyond the court’s jurisdiction. They argue that their claims are collateral attacks on the
 
 Watt
 
 judgment. They allege that the Appellees who served as class representatives in
 
 Watt
 
 provided inadequate representation.
 

 Presumably, this theory attempts to establish subject matter jurisdiction by asserting a due process violation.
 
 See Phillips Petroleum Co. v. Shutts,
 
 472 U.S.
 
 *1017
 
 797, 812, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) (“[T]he Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members.”). A due process claim provides subject matter jurisdiction when it is supported by facts “sufficient to state a violation of substantive or procedural due process.”
 
 Anderson v. Babbitt,
 
 230 F.3d 1158, 1163 (9th Cir.2000) (internal quotation marks omitted).
 

 Characterizing Appellants’ claims as collateral attacks on the
 
 Watt
 
 judgment does not establish that the district court had subject matter jurisdiction. The 2005 complaint does not collaterally attack the
 
 Watt
 
 judgment. Instead, it alleges that Appellees failed to comply with and effectuate the
 
 Wait,
 
 settlement.
 
 See, e.g.,
 
 2005 Complaint at 26 (requesting that “this Court ... issue declaratory judgment ... that these Defendants ... must comply with the stipulated judgment [in
 
 Watt
 
 ] ... ”). Claims of inadequate representation are nowhere to be found in Appellants’ 2005 complaint. As a result, we may not consider this claim because it is raised for the first time on appeal.
 
 See Cold Mt. v. Garber,
 
 375 F.3d 884, 891 (9th Cir.2004).
 

 C
 

 In concluding that it lacked jurisdiction to enforce the Waif judgment, the district court found that the relief Appellants sought was beyond the scope of the
 
 Watt
 
 judgment. Also, it determined that the terms of the
 
 Watt
 
 settlement provided jurisdiction to enforce the settlement only through June 16, 1984. The district court concluded that Appellants could not resort to principles of ancillary jurisdiction to overcome sovereign immunity.
 

 Appellants challenge the district court’s determination that it lacked ancillary jurisdiction to enforce the
 
 Watt
 
 judgment. First, Appellants argue that the district court erred in determining that they could not seek enforcement of the
 
 Watt
 
 settlement because they were not parties in
 
 Watt.
 
 Next, they contend that the district court erred in concluding that
 
 Watt
 
 did not involve questions of tribal membership. Third, they argue that the government appellees are bound by the
 
 Watt
 
 judgment.
 

 The fact that
 
 Watt
 
 was a federal lawsuit does not establish jurisdiction over an action to enforce the terms of its settlement.
 
 See O’Connor v. Colvin,
 
 70 F.3d 530, 532 (9th Cir.1995) (stating that federal courts do not enjoy any inherent jurisdiction to enforce a settlement agreement “simply because the subject of that settlement was a federal lawsuit”). In general, “[e]nforcement of [a] settlement agreement ... whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction.”
 
 Kokkonen,
 
 511 U.S. at 378, 114 S.Ct. 1673.
 

 The doctrine of ancillary jurisdiction provides an exception to this rule. Federal courts have ancillary jurisdiction “over some matters (otherwise beyond their competence) that are incidental to other matters properly before them.” Id. Specifically, a federal court has jurisdiction to enforce a settlement agreement in a dismissed ease when the dismissal order incorporates the settlement terms, or the court has retained jurisdiction over the settlement contract. Id at 381-82, 114 S.Ct. 1673. In both instances, the party seeking enforcement of the settlement agreement must allege a violation of the settlement agreement in order to establish ancillary jurisdiction. See
 
 O’Connor,
 
 70 F.3d at 532 (“Without a violation of the court’s order, there is no jurisdiction.”).
 

 The district court did not err in holding that it lacked ancillary jurisdiction
 
 *1018
 
 over Appellants’ claims. Appellants have not alleged violations of the
 
 Watt
 
 settlement. Their 2005 complaint is premised on the allegation that they were wrongfully excluded from membership in the TMR. This allegation does not constitute a violation of the
 
 Watt
 
 settlement because the
 
 Watt
 
 settlement did not establish membership in the TMR either expressly or by implication. Rather, the settlement provided that “[t]he status of the named individual plaintiffs and class members as Indians under the laws of the United States is confirmed.”
 

 Appellants cite no authority for the proposition that gaining Indian status under federal law is equivalent to acquiring membership in a tribe. The requirements that determine Indian status “vary depending upon the purpose for which Indian status is claimed.”
 
 United States v. Bruce,
 
 394 F.3d 1215, 1222 (9th Cir.2005). In at least one instance, “[t]ribal enrollment is ‘the common evidentiary means of establishing Indian status, but it is not the only means nor is it necessarily determinative.’ ”
 
 Id.
 
 at 1224 (citation omitted) (defining Indian status for purposes of 18 U.S.C. § 1152). We are not persuaded that the
 
 Watt
 
 judgment determined the
 
 Watt
 
 plaintiffs’ membership in a tribe simply because it made findings regarding the plaintiffs’ Indian status. Whether any of the Appellees have failed to recognize Appellants as tribe members is immaterial for purposes of the district court’s jurisdiction. Appellants’ 2005 complaint did not allege a violation of the
 
 Watt
 
 settlement within the district court’s ancillary jurisdiction.
 

 Appellants also cannot assert ancillary jurisdiction by virtue of the
 
 Watt
 
 settlement’s retention of jurisdiction. The
 
 Watt
 
 settlement only extended jurisdiction “for a period of one year from entry of judgment, or for such longer time as may be shown to be necessary on a motion duly noticed by any party within one year from entry of judgment.” The
 
 Watt
 
 judgment was entered on June 16, 1983. Therefore, whatever ancillary jurisdiction the district court had expired on June 16,1984.
 

 D
 

 In their statement of jurisdiction, Appellants assert that the district court had jurisdiction pursuant to “28 U.S.C. § 1331, and 28 U.S.C. § 1346, as the United States or an agency of the United States was a defendant in the matter.”
 
 Opening Br.
 
 at 8. We surmise that this is an attempt to establish federal question jurisdiction. This attempt also fails.
 

 The only ai’guably relevant provisions of 28 U.S.C. § 1346 vest the district courts with original jurisdiction over civil actions in which the United States is the defendant. Pursuant to Section 1346(a)(2), district courts have subject matter jurisdiction over certain types of civil actions “against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States.” Appellants’ claims are not founded on the Constitution, an Act of Congress, or a regulation of an executive department. To the extent that they are founded on a breach of the settlement agreement, Section 1346(a)(2) does not establish jurisdiction on that ground because it “impliedly forbids” the only kind of relief (declaratory and injunctive) sought against the United States.
 
 North Side Lumber Co. v. Block,
 
 753 F.2d 1482, 1485 (9th Cir.1985).
 

 Section 1346(b)(1), the Federal Tort Claims Act (FTCA), waives the United States’ sovereign immunity “in a defined category of cases involving negligence committed by federal employees in the course of their employment.”
 
 Dolan v.
 
 
 *1019
 

 United States Postal Serv.,
 
 546 U.S. 481, 484, 126 S.Ct. 1252, 163 L.Ed.2d 1079 (2006). Appellants cannot establish subject matter jurisdiction through the FTCA because they have not administratively exhausted their claims.
 
 See Jerves v. United States,
 
 966 F.2d 517, 518 (9th Cir.1992) (explaining that “[t]he Federal Tort Claims Act ... vests the federal district courts with exclusive jurisdiction over suits arising from the negligence of Government employees,” but “before an individual can file an action against the United States in district court, she must seek an administrative resolution of her claim” to establish subject matter jurisdiction).
 

 E
 

 Finally, we conclude that the district court did not err in failing to consider whether it had original jurisdiction over Appellants’ APA claim brought against the Secretary of the Interior, and supplemental jurisdiction over Appellants’ remaining state law claims.
 

 The APA provides for judicial review of “[ajgency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court.” 5 U.S.C. § 704. The district court dismissed the APA claim brought against the United States for lack of subject matter jurisdiction, concluding that “claims under the APA must be filed against a federal ‘agency’ within the meaning of 5 U.S.C. § 551(1).” The district court dismissed the APA claim brought against the Secretary of the Interior because Appellants did not allege that they had exhausted their administrative remedies. However, the district court noted that “[tjhere is some chance ... that [Appellants] can state a claim for relief under the APA” based on the Secretary of the Interior’s duty “to order the [TMR] to admit them as members,” and granted leave to amend that claim. Appellants did not amend their APA claim against the Secretary of the Interior, and as a result, the district court later dismissed the entire 2005 complaint with prejudice.
 

 The district court did not expressly address the question of whether it had subject matter jurisdiction over the APA claim brought against the Secretary of the Interior. Therefore, dismissal of that claim did not resolve the questions of whether the district court had to assume supplemental jurisdiction over Appellants’ state law claims, or whether it could decline to exercise supplemental jurisdiction over the state law claims.
 
 See
 
 28 U.S.C. §§ 1367(a), (c).
 

 We do not review the district court’s failure to address those issues. Rather, we affirm the district court’s dismissal of the APA claim brought against the Secretary of the Interior, and its dismissal of the 2005 complaint as a whole, on an alternate ground supported by the record.
 
 See Atel Fin. Corp. v. Quaker Coal Co.,
 
 321 F.3d 924, 926 (9th Cir.2003) (per curiam) (“We may affirm a district court’s judgment on any ground supported by the record, whether or not the decision of the district court relied on the same grounds or reasoning we adopt.”).
 

 In their opposition to Appellees’ motion to dismiss, Appellants alleged that their APA claim related to the Secretary of the Interior’s failure to comply with its duty under the
 
 Watt
 
 judgment, and the Secretary’s “statutory duty under Part 290 of Title 25, C.F.R.” This claim seeks to compel agency action.
 
 See §
 
 706(1) (providing a cause of action to “compel agency action unlawfully withheld or unreasonably delayed”). Therefore, it “ ‘can proceed only where a plaintiff asserts that an agency failed to take a
 
 discrete
 
 agency action that it is
 
 required to take.’” Gros Ventre Tribe v. United States,
 
 469 F.3d 801, 814 (9th Cir.2006) (quoting
 
 Norton v. S. Utah Wilderness Alliance,
 
 542 U.S. 55, 64, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004)). Ab
 
 *1020
 
 sent such an assertion, a Section 706(1) claim may be dismissed for lack of jurisdiction.
 
 Id.
 

 Appellants did not provide any authority for the proposition that
 
 any
 
 federal agency was required to order the TMR to admit Appellants as members. In fact, “Appellants decided not to amend the complaint on the APA issue, because of the relative unimportance of that issue, and because it would have delayed appeal of the matter.”
 
 Opening Br.
 
 at 5 n. 1. As discussed
 
 infra,
 
 the
 
 Wait
 
 settlement did not require the Secretary of the Interior to force the TMR to admit Appellants as members. Because Appellants failed to allege any authority to support their APA claim, the district court lacked jurisdiction over the only claim that might have established original jurisdiction (i.e., federal question jurisdiction under 28 U.S.C. § 1331). As a result, the district court could not assert supplemental jurisdiction over any remaining state law claims, and the 2005 complaint was properly dismissed in its entirety.
 

 AFFIRMED.
 

 [1]
 

 . “[T]he term ‘Indian country’ ... means (a) all land within the limits of any Indian reser
 
 *1012
 
 vation under the jurisdiction of the United States Government ..., (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.” 18 U.S.C. § 1151.
 

 [2]
 

 . The Table Mountain Ranchería Association is described as "the governing body of the American Indian Tribe, Band, or Community consisting of the Indians and their descendants and/or Indian successors in interest for whose benefit the United States of America acquired and created the Table Mountain Ranchería."
 

 [3]
 

 . The
 
 Watt
 
 complaint identifies plaintiffs Clarence Jones, Lester Burrough, E.B. Barnes, Lewis Barnes, and William Walker as "persons named in the final plan for the distribution of the assets ... of the [TMR] ... as being distributees ... of the assets of said Ranchería.'’
 

 [4]
 

 . This notice is somewhat inconsistent with the
 
 Wall
 
 settlement, which required the Secretary of the interior to list “the Table Mountain Band of Indians as an Indian Tribal entity.'' However, it also required the United States to hold land in. trust for “the Table Mountain Band of Indians or the Indians of the Table Mountain Ranchería, as may be specified in the instrument(s) of conveyance.” The
 
 Watt
 
 complaint identifies the
 
 Watt
 
 plaintiffs as those individuals who lost their status as Indians under federal law as a result of their participation in the Table Mountain distribution plan, not as the individuals who made up the Table Mountain Band of Indians. Also, the
 
 Watt
 
 plaintiffs are referred to collectively as "the Indians of the Table Mountain Rancheria.” Appellants seek admission to the Table Mountain Rancheria, and identify that entity as “a party plaintiff in
 
 [Watt
 
 ].”
 
 *1014
 
 Therefore, we refer to the tribe defendant in this case as the Table Mountain Ranchería, not as the Table Mountain Band of Indians.
 

 [5]
 

 . The
 
 Watt
 
 complaint's caption lists the TMR as ‘‘dba or successor to the Table Mountain Ranchería Association."
 

 [6]
 

 . In approaching subject matter jurisdiction in this manner, we do not criticize the district court’s immunity-based conclusions. The holding in
 
 Santa Clara Pueblo v. Martinez
 
 has been interpreted to preclude federal court jurisdiction over challenges to tribal membership on the basis that tribes are immune from suit.
 
 Lewis,
 
 424 F.3d at 961. We reach the same conclusion as the district court, but rely on a more basic, although in no way superior, principle.