# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHRISTOPHER COOK; LEIDRA COOK,
      *Plaintiffs-Appellants,*

v.

AVI CASINO ENTERPRISES, INC., a
corporation; IAN DODD; JUAN
MAJIAS; STEPHANIE SHAIK; DEBRA
PURBAUGH; ANDREA CHRISTENSEN,
      *Defendants-Appellees.*

No. 07-15088

D.C. No.
CV-04-01079-PGR

OPINION

Appeal from the United States District Court
for the District of Arizona
Paul G. Rosenblatt, District Judge, Presiding

Argued and Submitted
September 9, 2008—San Francisco, California

Filed November 14, 2008

Before: Ferdinand F. Fernandez, Ronald M. Gould, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Gould;
Concurrence by Judge Gould;
Partial Concurrence and Partial Dissent by Judge Fernandez

**COUNSEL**

Bradley L. Booke, Moriarity Badaruddin & Booke, Las Vegas, Nevada, for the plaintiffs-appellants.

Theodore A. Julian, Jr., Burch & Cracchiolo, P.A., Phoenix, Arizona, for the defendants-appellees.

## OPINION

GOULD, Circuit Judge:

Plaintiff Christopher Cook ("Cook"), a California resident, seeks recovery for damages suffered as a result of a motor vehicle accident in which, while on a motorcycle, he was hit by a drunk driver. The driver was an employee of defendant Avi Casino Enterprises, Inc. ("ACE"), a tribal corporation, and she allegedly became intoxicated at an Avi Casino function. Cook sued the tribal corporation and several of its employees, alleging negligence and dram shop liability. Defendants asserted defenses based on federal Indian law. Defendants claim (1) that there is an absence of subject matter jurisdiction because the Indian tribe that owns ACE is, like Cook, a California citizen and (2) that tribal sovereign immunity shields ACE and its employees from suit.

We affirm the district court, in part on alternate grounds supported by the record. We agree with Cook that we have jurisdiction over ACE because there is diversity of citizenship. However, we affirm the dismissal of Cook's claims against ACE on the alternate ground of tribal sovereign immunity. We affirm the district court's dismissal of defendants Ian Dodd ("Dodd") and Debra Purbaugh ("Purbaugh") on the same ground and do not reach Defendants' other arguments for dismissal.

## I

### A

Christopher Cook seeks relief because employees of Avi Casino gave an intoxicated fellow employee free drinks, then drove her to her car; she drove her car into Cook minutes later.[1]

---

[1]Facts regarding the accident are taken from Cook's complaint. Because the district court dismissed Cook's claims pursuant to Federal Rule of Civil Procedure 12(b)(1), alleged facts not relating to subject matter jurisdiction are assumed to be true. *Wah Chang v. Duke Energy Trading and Marketing*, 507 F.3d 1222, 1224 n.1 (9th Cir. 2007).

Andrea Christensen ("Christensen"), a cocktail waitress at Avi Casino, attended a nighttime birthday party at the casino for another employee. Defendants Ian Dodd and Debra Purbaugh were among the casino employees at the party, during which Dodd, the on-duty manager, announced that drinks were "on the house." Christensen was off-duty, and Purbaugh served her alcoholic beverages after she was obviously intoxicated.

Defendants let Christensen board a casino-run shuttle bus to the employee parking lot so that she could drive home. Christensen headed north on Aztec Road, which was located within the Fort Mojave reservation. Leading to the tragic accident, Cook was driving his motorcycle southbound on the same road; he was heading home after visiting his mother-in-law. Minutes after leaving the parking lot, Christensen swerved across the center line and hit Cook's motorcycle.[2] Cook suffered catastrophic injuries, including the loss of his left leg, resulting in more than $1,000,000 in medical expenses. Christensen pled guilty to aggravated assault and driving under the influence and was sentenced to four years in Arizona prison. She is not a party to this appeal.

**B**

Avi Casino is owned and operated by Avi Casino Enterprises, Inc., a corporation organized under the Fort Mojave Business Corporation Ordinance, which is a tribal law of the Fort Mojave Indian Tribe (the "Tribe"). The Tribe is a federally recognized Indian tribe, and its reservation spans California, Nevada, and Arizona. The Tribe's seat of government is in Needles, California, but Avi Casino is located on reservation lands in Nevada, and ACE's headquarters is in Laughlin, Nevada. Avi Casino operates under an intergovernmental agreement between the Tribe and the state of Nevada that per-

---

[2]By 4:30 a.m. the following morning, Christensen had a blood alcohol content of at least 0.25 percent.

mits the Tribe to operate casinos on tribal lands within the state.

ACE is wholly owned and controlled by the Tribe. ACE shareholder functions are performed by the Fort Mojave Tribal Council on behalf of and for the benefit of the Tribe. A majority of ACE's board of directors must be Tribe members. ACE's articles of incorporation state that all capital surplus not used for corporate development must be deposited in the Tribe's general fund.

## C

Cook sued ACE, Christensen, Dodd, Purbaugh, and other casino employees in Arizona federal district court. Cook sought compensatory and punitive damages for negligence and dram shop liability under Arizona's liquor liability statute and Fort Mojave tribal law.

All defendants but Christensen filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), claiming a lack of diversity jurisdiction. Cook argued that Dodd and Purbaugh were citizens of Arizona but conceded that the other employees named in the complaint were, like Cook, California citizens. On Cook's recommendation, the district court dismissed all claims against these other employees, as well as claims against 25 unnamed defendants. Defendants argued that ACE was a citizen of California because it was incorporated under tribal law and the Tribe's headquarters were in Needles, California. The district court agreed, applying traditional corporate citizenship analysis under 28 U.S.C. § 1332(a). The court determined that ACE was a citizen of Nevada because its principal place of business, the casino, was located there; the court also ruled that ACE was a California citizen because it was incorporated by the Tribe, and the Tribe's headquarters were in California.

Dodd and Purbaugh then filed a second motion to dismiss, alleging that as ACE employees they were shielded from lia-

bility by the Tribe's sovereign immunity, which should extend to ACE and Avi Casino. The district court granted the motion, concluding that the Tribe's sovereign immunity covered ACE because the corporation functioned as an arm of the Tribe. It further held that the tribal sovereign immunity covered Dodd and Purbaugh as tribal employees acting within the scope of their employment. Although Christensen remains a defendant in the action, the district court entered a separate judgment dismissing ACE, Dodd, and Purbaugh. Cook appealed.

## II

We review *de novo* a district court's dismissal for lack of subject matter jurisdiction. *Rattlesnake Coalition v. U.S. Envtl. Prot. Agency*, 509 F.3d 1095, 1100 (9th Cir. 2007). Factual findings relevant to subject matter jurisdiction are reviewed for clear error. *Id.* We also review *de nov*o questions of tribal sovereign immunity. *Lineen v. Gila River Indian Cmty.*, 276 F.3d 489, 492 (9th Cir. 2002). We may affirm a district court's judgment of dismissal on any grounds supported by the record. *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1019 (9th Cir. 2007). Here, we may affirm the district court's dismissal on diversity jurisdiction or tribal sovereign immunity grounds. We address both.

## III

### A

[1] We have jurisdiction only if Cook, a resident of California, has citizenship which is diverse from that of every defendant. *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (stating that diversity jurisdiction requires "complete diversity of citizenship"). As the party asserting jurisdiction, Cook has the burden of proving such diversity exists. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The parties agree that defendants Dodd and Purbaugh have

citizenship diverse from Cook. The key question is whether ACE, a tribal corporation, is like Cook a citizen of California.

**[2]** An Indian tribe or an unincorporated arm of a tribe is not a citizen of any state. *American Vantage Cos. v. Table Mountain Rancheria*, 292 F.3d 1091, 1098 (9th Cir. 2002). However, our case law offers little help in determining the citizenship of an Indian corporation created under tribal law. In *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, we asserted in dictum that "[t]here is authority for the proposition that for purposes of diversity jurisdiction, an Indian corporation is a citizen of the state in whose borders the reservation is located." 873 F.2d 1221, 1226 (9th Cir. 1989). If so, then ACE would be a citizen of California, Arizona, and Nevada because the Fort Mojave reservation spans all three states. On closer inspection, however, we conclude that there is no such "authority" for this principle as so broadly stated. To support its reasoning, *Stock West* relied on three decisions of our circuit, all of which held that a tribal corporation is a citizen of the state where it has its principal place of business. *See R.J. Williams Co. v. Fort Belknap Hous. Auth.*, 719 F.2d 979, 982 (stating that tribal corporation had its "principal place of business in Montana"); *R.C. Hedreen Co. v. Crow Tribal Hous. Auth.*, 521 F. Supp. 599, 602-03 (D. Mont. 1981) (stating that tribal corporation "has its principal and only place of business in the state of Montana" and "[a]ccordingly, it is a citizen of the state for purposes of diversity jurisdiction"); *Parker Drilling Co. v. Metlakatla Indian Cmty.*, 451 F. Supp. 1127, 1138 (D. Alaska 1978) ("As [tribal corporation's] only major business activities, and situs, are located in Alaska it is an Alaskan corporation for diversity purposes."). The tribal reservation in each of those cases was located in only one state, the same state as the tribal corporation's principal place of business. We agree with the district court's rejection of the dictum of *Stock West*. If *Stock West* stands for anything on this matter, it is that a tribal corporation is a citizen of the state where it has its principal place of business. *See* William C. Canby, Jr., American Indian Law

223 (4th ed. 2004) ("A tribe may, however, charter a tribal corporation that becomes a citizen of the state of its principal place of business . . . ."). But the parties agree that ACE's principal place of business is in Nevada, which by itself does not destroy diversity.

**[3]** We are left with what the district court called "an absolute dearth of case law" on this issue. District Court Order at 6. We find some guidance, however, in our decision in *American Vantage*. Although there we analyzed diversity jurisdiction over an unincorporated casino, we stated that an entity incorporated under tribal law "is the equivalent of a corporation created under state or federal law for diversity purposes." *American Vantage*, 292 F.3d at 1099 n.8. We conclude that a corporation organized under tribal law should be analyzed for diversity jurisdiction purposes as if it were a state or federal corporation.

**[4]** Under the federal diversity statute, a corporation is a citizen of (1) "any State by which it has been incorporated" and (2) "the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). ACE is a Nevada citizen because its principal place of business is there. Defendants claim that ACE is also a citizen of California because it was incorporated at the tribal seat of government in Needles, California. The district court agreed, finding that under the Fort Mojave Business Corporation Ordinance ACE was incorporated by the tribal secretary, and Cook offered no evidence to indicate that the tribal secretary performed these acts anywhere besides tribal headquarters.

**[5]** However, even if it is true that the tribal secretary performed the acts of incorporation in California, ACE is not a California citizen. The district court stated that a corporation is a citizen of "any state *where* it was incorporated." District Court Order at 6 (emphasis added) But more precisely, under 28 U.S.C. § 1332(c)(1), a corporation is a citizen of the "state *by which* it has been incorporated" (emphasis added). *Cf.*

*Thomson v. Gaskill*, 315 U.S. 442, 446 (1942) ("The policy of the statute conferring diversity jurisdiction upon the district courts calls for its strict construction."). We have not focused on this difference in the past when analyzing non-tribal corporations. *See Industrial Tectronics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) ("For the purposes of diversity jurisdiction, a corporation is a citizen of any state *where* it is incorporated . . . .") (emphasis added). Here, however, the distinction is critical. A corporation is a creature of a political entity. As a tribal corporation, ACE was organized under the laws of the Fort Mojave Tribe, which is a separate sovereign independent from state control. *See American Vantage*, 292 F.3d at 1096 ("Rather than belonging to state political communities, [tribes] are distinct independent political communities. Tribes also owe no allegiance to a state.") (citations omitted). ACE is governed by tribal, not state, corporate law, and from the state's perspective a tribal corporation is much like a foreign corporation. *Id.* ("Indian tribes fall under nearly exclusive federal, rather than state, control.").[3] ACE was not incorporated by virtue of state law, nor does ACE owe its continuing existence to the state law chartering corporations. Instead, ACE's creation and continuance is a function of tribal law. Although ACE might have been physically present "in" the state of California when it was created by the Tribe, it was not created "by" California, as is required by the diversity statute to establish citizenship. ACE instead was created by the Tribe.

There is no conflict between our analysis and the established rule that a tribal corporation is a citizen of the state where it has its principal place of business. While a corporation is a citizen of the state "by which" it was created, it is also a citizen of the state "where" it has its principal place of

---

[3]Our treatment of tribal corporations as distinct sovereign entities does not imply that Indian tribes themselves are foreign states. *See Allen v. Gold Country Casino*, 464 F.3d 1044, 1047 (9th Cir. 2006) (stating that an Indian tribe is not a foreign state).

business. 28 U.S.C. § 1332(c)(1). The principal place of business clause refers to location and does not require formative action by or authority of a state leading to creation of a corporation. Avi Casino is located inside the state of Nevada, and the business activities of ACE are primarily in Nevada. By contrast, the incorporation of ACE, its creation and continuation, is a tribal matter, an incident of tribal sovereignty.

**[6]** We hold that, for diversity purposes, a tribal corporation formed under tribal law is not a citizen of a state merely because its incorporation occurred inside that state. ACE is thus only a citizen of Nevada, the location of its principal place of business. We therefore conclude that we have subject matter jurisdiction over this case because none of the defendants are citizens of California.[4]

**B**

**[7]** Even though we have diversity jurisdiction, we must nonetheless dismiss any defendants who are protected by the Fort Mojave Tribe's sovereign immunity.

A sovereign can assert immunity "at any time during judicial proceedings." *In re Jackson,* 184 F.3d 1046, 1048 (9th Cir. 1999). We have occasionally considered the issue *sua sponte*. *See id*. Yet even when a party does not invoke sovereign immunity until appeal, it does not waive immunity unless it voluntarily invokes jurisdiction or makes "a 'clear declaration' that it intends to submit itself to jurisdiction." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). We will entertain a sovereign immunity defense so long as a defendant provides "fair warning . . . before the parties and the court have invested substantial resources in the case." *Hill v. Blind Industries and Services of Maryland*, 179 F.3d 754, 758 (9th Cir. 1999).

---

[4]We need not address Cook's claims that ACE was actually incorporated in Arizona.

ACE has objected to our jurisdiction since the beginning. The tribal corporation did not raise a tribal immunity defense initially and chose instead to pursue a dismissal on diversity jurisdiction grounds. Nonetheless, Cook has had fair warning of ACE's tribal immunity argument because that immunity is central to the defense of Dodd and Purbaugh, which on appeal was argued together with ACE's diversity claims. *See id.* at 758. For this reason, we treat the issue as having been fairly raised.

**[8]** Tribal sovereign immunity protects Indian tribes from suit absent express authorization by Congress or clear waiver by the tribe. *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 754 (1998). This immunity applies to the tribe's commercial as well as governmental activities. *Id.* at 754-55. The parties do not dispute that the Fort Mojave Tribe itself is protected by sovereign immunity, but they disagree on whether ACE enjoys immunity as a tribal corporation.

Cook insists that tribal corporations competing in the economic mainstream should not enjoy the same immunity from suit given to Indian tribes themselves. Cook claims it is unfair to allow tribes to create commercial corporations that can compete in the marketplace while enjoying immunity from the legal liability that all other corporations must face, and he asserts that granting tribal corporations immunity is unnecessary to protect tribal autonomy and self-government. Cook cites language used by district courts in our circuit and others showing a reluctance to extend immunity to tribal business enterprises. *See, e.g.*, *Parker Drilling Co. v. Metlakatla Indian Cmty.*, 451 F. Supp. 1127, 1137 (D. Alaska 1978) ("Only with the potential for imposition of tort liability are Indian corporations truly equal, regardless of the desirability of certain aspects of that status."); *Namekagon Dev. Co. v. Bois Forte Reservation Hous. Auth.*, 395 F. Supp. 23, 29 (D. Minn. 1974) ("It is repugnant to the American theory of sovereignty that an instrumentality of the sovereign shall have all the rights

and advantages of a trading corporation, and the ability to sue, and yet be itself immune from suit . . . ." (quoting *Fed. Sugar Ref. Co. v. U.S. Sugar Equalization Bd.*, 258 F. 575, 587 (S.D.N.Y. 1920))).

**[9]** Cook's policy arguments are not without some insight but are foreclosed by our precedent. The Supreme Court has somewhat grudgingly accepted tribal immunity in the commercial context. *Kiowa*, 523 U.S. at 758 ("There are reasons to doubt the wisdom of perpetuating [tribal immunity] . . . . [T]ribal immunity extends beyond what is needed to safeguard tribal self-governance. This is evident when tribes take part in the Nation's commerce."). However, the Court has also stated that restrictions on tribal immunity are for Congress alone to impose. *Id*. at 760. And the settled law of our circuit is that tribal corporations acting as an arm of the tribe enjoy the same sovereign immunity granted to a tribe itself. We reaffirmed this rule in *Allen*, which involved very similar facts to those raised here. 464 F.3d 1044. In that case, a former tribal casino employee sued the casino for various employment violations. We held that whether tribal immunity extends to a tribal business entity depends not on "whether the activity may be characterized as a business, which is irrelevant under *Kiowa*, but whether the entity acts as an arm of the tribe so that its activities are properly deemed to be those of the tribe." *Id*. at 1046. We noted that the tribe authorized the casino through a tribal ordinance and interstate gaming contract, that the economic advantages created by the casino "inure[d] to the benefit of the Tribe," and that "[i]mmunity of the casino directly protect[ed] the sovereign Tribe's treasury." *Id*. at 1046-47. We concluded that the casino functioned as "an arm of the Tribe" and accordingly enjoyed tribal immunity. *Id*. at 1047.

**[10]** The record supports the district court's conclusion that ACE and Avi Casino function as an arm of the Fort Mojave Tribe.[5] As in *Allen*, here the Tribe created ACE pursuant to

---

[5]We see no importance in the distinction that here ACE is a tribal corporation while the casino in *Allen* may have been unincorporated. *See*

a tribal ordinance and intergovernmental agreement, and the tribal corporation is wholly owned and managed by the Tribe. Cook does not contend otherwise. Also as in *Allen*, the economic benefits produced by the casino inure to the Tribe's benefit because ACE's articles of incorporation state that all capital surplus from the casino shall be deposited in the Tribe's treasury and because the Tribe, as the sole shareholder, enjoys all of the benefits of an increase in the casino's value. A majority of ACE's board must be Tribe members, and the Tribe's council performs corporate shareholder functions for the benefit of the Tribe.

Despite his vigorous arguments that, as a matter of policy, tribal corporations should be held to lack sovereign immunity, Cook does not persuasively distinguish *Allen's* holding that these entities already do have sovereign immunity, an issue squarely presented and decided in *Allen*. Cook does not discuss *Allen* in his brief, and his response at oral argument was that he was prevented from finding factual distinctions from *Allen* by an incorrect discovery order. But we see no evidence in the record of Cook's objection to the discovery order, nor was the issue preserved for appeal. Moreover, the cases Cook cites in support of his position acknowledge a tribal entity's sovereign immunity and concern only whether the entity had waived that immunity. *See, e.g.*, *Parker Drilling*, 451 F. Supp. at 1137. Cook does not contend that ACE has waived tribal immunity.[6]

---

*American Vantage*, 292 F.3d at 1099 ("A tribe that elects to incorporate does not automatically waive its tribal sovereign immunity by doing so."). *See also* Canby, *supra*, at 101-02 ("Incorporation by itself does not waive immunity.").

[6]In a decision subsequently vacated in pertinent part, we once held that a "sue and be sued" clause in a tribal enabling ordinance may waive tribal immunity in entities created under that ordinance. *Marceau v. Blackfeet Hous. Auth. (Marceau I)*, 455 F.3d 974, 978-83 (9th Cir. 2006). Although we later vacated that holding on tribal exhaustion grounds, so as to facili-

**[11]** *Allen* controls this case and we hold that as a tribal corporation and an arm of the Fort Mojave Tribe, ACE enjoys sovereign immunity from Cook's suit.

## C

**[12]** The final question is whether ACE's tribal immunity extends to two of its employees, defendants Dodd and Purbaugh. We conclude that it does. Tribal sovereign immunity "extends to tribal officials when acting in their official capacity and within the scope of their authority." *Linneen v. Gila River Indian Community*, 276 F.3d 489, 492 (9th Cir. 2002). In these cases the sovereign entity is the "real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Regents of the University of California v. Doe*, 519 U.S. 425, 429 (1997). Applying this principle to tribal rather than state immunity, we have held that a plaintiff cannot circumvent tribal immunity "by the simple expedient of naming an officer of the Tribe as a defendant, rather than the sovereign entity." *Snow v. Quinalt Indian Nation*, 709 F.2d 1319, 1322 (9th Cir. 1983). Cook alleges in each substantive count of his complaint that Dodd and Purbaugh acted in the course and scope of their authority as casino employees.

tate an initial review of the issue by tribal court, we did not disavow or reject our initial and now vacated analysis. *Marceau v. Blackfeet Hous. Auth. (Marceau III)* 540 F.3d 916, 921 (9th Cir. 2008). Accordingly, the issue whether a "sue and be sued" clause in a tribe's enabling ordinance effectuates a waiver of tribal sovereign immunity remains a live issue for determination in this circuit. ACE's enabling ordinance states that corporations formed by the Tribe may "sue and be sued" in their corporate name. Writing while *Marceau I* was still in effect, the district court noted that ACE might have waived sovereign immunity but declined to analyze the issue because Cook did not raise it. Cook has not raised this issue on appeal either, and so we will not decide the issue. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived.").

**[13]** We have not yet addressed whether tribal immunity extends beyond tribal officials to employees of a tribe acting in their official capacity and within the scope of their authority, but we have extended federal sovereign immunity to employees of the United States. *See Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985) ("[S]overeign immunity cannot be avoided by naming officers and employees of the United States as defendants."). The Second Circuit addressed this issue and saw no relevant difference between tribal employees and officials. *Chayoon v. Chao*, 355 F3d 141, 143 (2d Cir. 2004) ("[Plaintiff] cannot circumvent tribal immunity by merely naming officers or employees of the Tribe when the complaint concerns actions taken in defendants' official or representative capacities and the complaint does not allege they acted outside the scope of their authority."). We reach the same conclusion. The principles that motivate the immunizing of tribal officials from suit—protecting an Indian tribe's treasury and preventing a plaintiff from bypassing tribal immunity merely by naming a tribal official—apply just as much to tribal employees when they are sued in their official capacity. Here, Cook has sued Dodd and Purbaugh in name but seeks recovery from the Tribe; his complaint alleges that ACE is vicariously liable for all actions of Dodd and Purbaugh. Plaintiffs such as Cook cannot circumvent tribal immunity through "a mere pleading device." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989). Accordingly, we hold that tribal immunity protects tribal employees acting in their official capacity and within the scope of their authority. Cook has sued Dodd and Purbaugh in their official capacity only, and thus the district court correctly dismissed them from this suit.

## IV

Our conclusion that Cook has established diversity jurisdiction does not change the outcome. The district court properly dismissed Cook's claims against ACE and individual defendants Dodd and Purbaugh because all these defendants are

protected by tribal sovereign immunity. Each party shall bear its own costs on appeal.

**AFFIRMED.**

---

GOULD, Circuit Judge, concurring:

I am sorry to say that the austerity of our jurisprudence concerning tribal sovereign immunity leaves me with the conclusion that an unjust result is reached that our law might better preclude. As the case comes to us, we see Christopher Cook, catastrophically injured as the result allegedly of gross and culpable negligence of Avi Casino's employees. However, our precedent under *Allen* makes clear that so long as Avi Casino Enterprises was acting as an arm of the Tribe, which appears to be the case, it gains a tribal sovereign immunity commensurate with that of the Tribe itself. From this, it follows in logic that involved casino employees, when sued in corporate capacity for torts committed in the course of employment, also gain immunity. This leaves Mr. Cook without a remedy against Avi Casino for his grave injuries under our law, even if his assertions of negligence by casino employees are correct.

In my view it would be desirable if (1) the United States Supreme Court on review were to establish a new rule limiting tribal sovereign immunity in this gaming context; or (2) the Congress were to pass new legislation limiting the sovereign immunity of tribal entities involved in ubiquitous commercial gaming activities across the United States; (3) the Tribe itself were to take responsibility for its casino employees' actions, and affirmatively waive sovereign immunity in this case permitting Cook's action to be resolved under a litigated adversarial process. Alternatively, my concerns would be alleviated if one were to hold that the "sue and be sued" clause in a tribal enabling ordinance effectuated a waiver of

tribal sovereign immunity (an issue we think not raised on Cook's appeal).

Lest it appear that I am offering a general challenge to the concept of sovereign immunity for Indian tribes, I clarify that is not my aim. I have no disagreement with applying the doctrine of sovereign immunity to any important actions of Indian tribes, their officials, corporate arms, and employees when those actions are aimed at matters of governance of the Indian nation or policy matters that are critical to their continuation as a tribe. However, I question whether that doctrine can sensibly be applied to actions wholly commercial in the gaming area where the tribe has undertaken to compete and to provide services for the general public. In this sphere our law can be modified to ensure that the needs of justice for injured individuals limit the scope of the sovereign immunity doctrine for Indian tribes engaged in gaming commercial activities.

---

FERNANDEZ, Circuit Judge, concurring and dissenting:

I concur in parts IIIB and C of the majority opinion and in the result.

I do not concur in part IIIA. To the extent that it is necessary to opine on diversity jurisdiction, which it probably is not, I do not agree that there is diversity. We know that a tribe is not a foreign state. *See Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1226 (9th Cir. 1989). We know that a tribe is neither a state nor a citizen of a state, but we treat tribal corporations that way for diversity purposes. *See Am. Vantage Cos., Inc. v. Table Mountain Rancheria*, 292 F.3d 1091, 1094 n.1 (9th Cir. 2002); *R.J. Williams Co. v. Fort Belknap Housing Auth.*, 719 F.2d 979, 982-83 (9th Cir. 1983). We also know that corporations are usually citizens of the state of incorporation and of the state

where their principal place of business is located. *See* 28 U.S.C. § 1332(c)(1); *Indus. Tectronics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). We also know that this court has further indicated that, in general, a tribal corporation is a citizen of the state (here three states) within whose boundaries the reservation is located. *See Stock W.*, 873 F.2d at 1226. While the majority rejects the latter proposition, it is one simple way to resolve the question before us and is no more fictional than the approach adopted by the majority. Finally, if we are going to apply the usual corporate diversity rule, I see no principled basis for accepting the fiction that for diversity purposes a corporation that has its principal place of business (here its only place of business) on tribal property has its principal place of business in a state (Nevada), while rejecting the fiction that for diversity purposes a state "where" the corporation was incorporated (here the tribal headquarters in California) is a corporation "of" that state even though it was not incorporated by that state (California). *See Indus. Tectronics*, 912 F.2d at 1092 ("a corporation is a citizen of any state where it is incorporated."). Especially is that true where the corporation, as here, is an arm of the tribe.

Therefore, I respectfully concur in part and dissent in part.