**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THE RATTLESNAKE COALITION,
  *Plaintiff-Appellant,*

v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY, an agency of the United
States; MICHAEL O. LEAVITT,
Administrator of the U.S. EPA;
CITY OF MISSOULA, a municipality
organized under the laws of
Montana,
  *Defendants-Appellees.*

No. 05-36097

D.C. No.
CV-04-00087-DWM

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
September 25, 2007—Seattle, Washington

Filed December 7, 2007

Before: Betty B. Fletcher, Andrew J. Kleinfeld, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Gould

**COUNSEL**

Craig Murdock, San Francisco, California; Carolyn K. Vinci, Missoula, Montana, for plaintiff-appellant The Rattlesnake Coalition.

Marilyn Kuray, Office of General Counsel, Environmental Protection Agency, Washington, D.C.; Sue Ellen Wooldridge, Assistant United States Attorney General, Washington, D.C.; David C. Shilton, Lauren Fischer, Jennifer L. Scheller, Attorneys, United States Department of Justice, Environment and Natural Resources Division, Washington, D.C., for defendant-appellee United States of America.

Jim Nugent, City Attorney, and Susan A. Firth, Deputy City Attorney, Missoula, Montana, for defendant-appellee City of Missoula.

**OPINION**

GOULD, Circuit Judge:

The Rattlesnake Coalition ("The Coalition") appeals the district court's dismissal for lack of subject matter jurisdiction and lack of standing of its action against the United States Environmental Protection Agency ("the EPA"), the Administrator of the EPA, and the City of Missoula ("Missoula"). The Coalition brought suit under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4322, seeking injunctive, declaratory, and other relief related to the preparation of Environmental Assessments ("EAs") and Environmental Impact Statements ("EISs") prior to implementation of the Missoula

Wastewater Facilities Plan Update ("MWFPU"). The Coalition argues that the district court erred by evaluating its complaint as two separate NEPA claims relating to two constituent projects of the MWFPU, and thereby concluding that the MWFPU itself was not a single, major federal action subject to NEPA regulations. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court.

**I**

In the 1980s Missoula planned and made many improvements to its wastewater treatment and collection system. In 1995, Missoula created the Wastewater Advisory Group, consisting of representatives from city and county departments, to lead the efforts to update the 1984 wastewater treatment plan. In 1999, Missoula published the MWFPU, which identified improvements necessary over a fifty-year period and suggested the implementation of several projects costing more than $88 million. MWFPU's goals included developing plans for wastewater treatment to protect the Clark Fork River and for serving unsewered areas with a wastewater collection and treatment system. Federal funds were not used in the creation of MWFPU.

In 1998, Missoula applied for a grant of $5 million from the EPA to support completion of the wastewater treatment plant upgrade ("WTPU"), a constituent project of MWFPU. The EPA awarded the grant on September 21, 1998, subject to the EPA's NEPA review. The NEPA review consisted first of the EPA's adoption of an EA prepared by the Montana Department of Environmental Quality ("DEQ") to assess the environmental impact of the projects identified in MWFPU. Also, on June 6, 2000, the EPA signed a Finding of No Significant Impact ("FONSI") for MWFPU, which it published in the *Missoulian* newspaper on June 18, 2000. The EPA received no significant comments regarding the FONSI, and on July 31, 2000, the EPA notified Missoula of its final approval of MWFPU for purposes of the $5 million grant.

From November 29, 2000 to September 8, 2003, the EPA dispensed all of the $5 million grant. Missoula completed the WTPU in October 2004, expending the entirety of the federal grant in the completion of the project.

In 2004, the United States Congress appropriated to the EPA $500,000 earmarked for Missoula's Rattlesnake Sewer Project ("RSP"). On May 6, 2004, the EPA regional office advised Montana DEQ that the EPA would undertake a NEPA review specific to the RSP. On July 27, 2004, Missoula applied to the EPA for a grant of the money from the 2004 appropriation.

On May 7, 2004, the Coalition filed a complaint against the EPA and Missoula alleging that the EPA should have prepared an EIS on both the WTPU and the RSP. The Coalition sought declaratory, injunctive and other relief against the EPA and Missoula to prevent Missoula from taking any action related to the planned construction of the RSP until the EPA complied with NEPA.

Both the EPA and Missoula filed Federal Rule of Civil Procedure 12(b)(1) motions to dismiss for lack of subject matter jurisdiction. The district court granted both defendants' motions, concluding that Missoula's MWFPU was not a major federal action triggering NEPA's application. The district court interpreted the Coalition's complaint as alleging two separate NEPA violations: one relating to the WTPU grant and one relating to the application for RSP funding.

The district court concluded that the Coalition did not have constitutional standing with regard to the $5 million grant to Missoula in 1998 for the WTPU, concluding that any harm it suffered was not redressable because the upgrades were complete and the federal funds were expended. As for the 2004 RSP appropriation, the district court ruled that it lacked subject matter jurisdiction because the EPA had not taken a final agency action as required to trigger application of NEPA.

The district court also concluded that it lacked subject matter jurisdiction to hear the Coalition's claims against Missoula. The district court based its dismissal on the fact that Missoula, as a non-federal actor, was not subject to the requirements of NEPA. The district court further held that the Coalition lacked standing to bring the action because Missoula could finance the construction of the RSP solely with state funds and avoid NEPA requirements altogether.

On September 30, 2005, the district court filed an order dismissing the case against both Missoula and the United States for lack of standing and lack of subject matter jurisdiction. The Coalition timely appealed.

## II

We review de novo a district court's dismissal for lack of subject matter jurisdiction. *Luong v. Circuit City Stores, Inc.*, 368 F.3d 1109, 1111 n.2 (9th Cir. 2004). The district court's factual findings relevant to its determination of lack of subject matter jurisdiction, however, are reviewed for clear error. *United States v. Peninsula Communications, Inc.*, 287 F.3d 832, 836 (9th Cir. 2002). We also review de novo a district court's determination of a party's standing to bring suit. *Buono v. Norton*, 371 F.3d 543, 546 (9th Cir. 2004).

## III

Preliminarily, the United States argues that the Coalition waived its ability to oppose the district court's rulings by failing in its opening brief to challenge the district court's determination that (1) the Coalition lacked standing because any injury it suffered from the WTPU is not redressable, and (2) the district court lacked jurisdiction over disposition of the claim regarding the RSP because there has been no final agency action by the EPA. We reject this argument because the Coalition challenged both of the district court's findings in its opening brief.

The Federal Rules of Appellate Procedure require that a brief contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies . . . ." Fed. R. App. P. 28(a)(9)(A). Issues raised in an opening brief but not supported by argument are considered abandoned. *Acosta-Huerta v. Estelle*, 7 F.3d 139, 144 (9th Cir. 1992); *Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir. 1985) ("[W]e will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in the appellant's opening brief.").

[1] The Coalition's opening brief challenges both of the district court's rulings in the body of its opening brief. The Coalition's discussion of what constitutes a major federal action under NEPA and its argument that the district court should have evaluated the MWFPU as a single, major federal action instead of separately evaluating the WTPU and the RSP, constitute a challenge to the district court's dismissal for lack of standing. The Coalition also contends in its opening brief that the EPA waived sovereign immunity under the Administrative Procedure Act ("APA") so that NEPA provides jurisdiction for this action.

[2] The Coalition's opening brief mounts an attack on both of the district court's rulings. We therefore reject the waiver argument presented by the United States and proceed to analyze the Coalition's appeal.

## IV

We first address the Coalition's claim that the district court erred in evaluating the complaint as containing two separate NEPA claims involving two distinct projects. The Coalition argues that the district court should have evaluated the MWFPU to determine if it, and not its constituent projects, was a single, major federal action. The Coalition contends

that had the district court found MWFPU to be a major federal action, it would have found that the Coalition's injury was redressable in the form of adequate environmental review of the uncompleted portion of the MWFPU in accordance with NEPA and a stay of further construction of the project until that review is completed. The Coalition's argument fails, however, because there is insufficient federal control over MWFPU to make it a major federal action under NEPA.

**[3]** To trigger the application of NEPA, an action must be "federal." 42 U.S.C. § 4332(2)(C); *see also* 40 C.F.R. § 1508.18(a) ("Actions include new and continuing activities, including projects and programs entirely or partly financed, assisted, conducted, regulated, or approved by *federal agencies* . . . .") (emphasis added). While "[t]here are no clear standards for defining the point at which federal participation transforms a state or local project into major federal action[,]. . . . '[m]arginal' federal action will not render otherwise local action federal." *Almond Hill Sch. v. U.S. Dep't of Agric.*, 768 F.2d 1030, 1039 (9th Cir. 1985). To determine whether a state development plan constitutes a major federal action under NEPA, we look to "the nature of the federal funds used and the extent of federal involvement." *Sierra Club v. Penfold*, 857 F.2d 1307, 1314 (9th Cir. 1988). "While significant federal funding can turn what would otherwise be a state or local project into a major federal action, consideration must be given to a great disparity in the expenditures forecast for the [local] and federal portions of the *entire* program." *Ka Makani 'O Kohala Ohana Inc. v. Dep't of Water Supply*, 295 F.3d 955, 960 (9th Cir. 2002) (internal quotation marks and citations omitted). Federal decisionmakers must also retain "power, authority, or control over" the state project. *Id.* at 960-61 ("[This authority] must be more than the power to give nonbinding advice to the nonfederal actor . . . the federal agency must possess actual power to control the nonfederal activity") (quoting *Village of Los Ranchos de Albuquerque v. Barnhart*, 906 F.2d 1477, 1482 (10th Cir. 1990) (internal quotation marks and citations omitted)).

**[4]** The creation of MWFPU was not a federal action. No federal funds were used in MWFPU's creation, and it is uncontested that the Wastewater Advisory Group, solely comprised of representatives from city and county departments, led efforts to develop the MWFPU. The creation of MWFPU was not a major federal action and does not establish subject matter jurisdiction in this case.

**[5]** Nor was the implementation of MWFPU a major federal action. We have found that federal funding amounting to just 10% of total estimated expenditures does not federalize a project for purposes of NEPA application. *Friends of the Earth, Inc. v. Coleman*, 518 F.2d 323, 329 (9th Cir. 1975). Missoula officials estimated that the cost to complete all of the planned improvements detailed in the MWFPU would total over $88 million. To date, only $5 million in federal funds have been awarded by the EPA. That $5 million federal grant was used in the construction of the WTPU, a project that cost just under $15 million to complete. While Congress has also earmarked $500,000 for the RSP, the EPA has yet to grant those funds to Missoula. As the district court found, the total federal funds awarded to Missoula comprises just under 6% of the estimated implementation budget. The Coalition stresses that the 6% calculation misrepresents the financial involvement of the United States because federal funds will no doubt be awarded in the future for the purpose of implementing other projects under the MWFPU. However, we cannot base our evaluation of the federal nature of the MWFPU on speculation about the future federal funding of its constituent projects. If Missoula determines to seek federal funding, it must apply to the EPA for federal funding for each constituent project of the MWFPU, and we cannot predict Missoula's action, or if funds are sought whether the EPA will fund these future projects, and, if so, to what degree. The small proportion of federal funding currently supporting the projects of the MWFPU does not federalize the implementation of the entire MWFPU.

**[6]** Moreover, a local plan does not become a major federal action subject to NEPA regulations merely upon its approval by a federal agency. *See Friends of the Earth,* 518 F.2d at 328-29. The development and improvement of sewage treatment by a municipality is intrinsically a local matter under the responsibility of local government. NEPA does not apply to an agency's approval of a local government's development program comprised of "distinct projects with separate functions and independent justifications," even if some of the constituent projects are entirely funded by the federal government. *See id.* The United States must maintain decisionmaking authority over the local plan in order for it to become a major federal action. *See Ka Makani,* 295 F.3d at 960-61. The Coalition has neither demonstrated that the WTPU is inextricably linked to the other projects proposed by MWFPU nor shown that the United States maintains control over the implementation of MWFPU.[1] Absent a showing of federal control of MWFPU, the EPA's approval of MWFPU and subsequent grant of $5 million to support the WTPU does not elevate the entire MWFPU to the status of a major federal action. The district court correctly evaluated the Coalition's complaint as containing two distinct NEPA claims.

---

[1]Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence. *See Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1558 (9th Cir. 1987); *see also* 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.30[5] (3d ed. 2007). Where a plaintiff has "made a sufficient showing that a fact-intensive analysis is required before a conclusion can be made as to whether the state and federal activities are so intertwined that the project qualifies as a major federal action," this court has remanded the issue to the district court for further discovery. *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1092 (9th Cir. 2003). Here, however, the plaintiffs have failed to meet that burden. Unlike the plaintiffs in *Laub*, who pointed to, among other things, language in federal-state agreements that the respective agencies would develop a single plan for implementing the project, the Coalition has failed to provide any support for its contention of federal control of MWFPU.

## V

Viewing the Coalition's complaint as two distinct NEPA claims—one involving the WTPU and the other involving the RSP—we consider whether the district court properly dismissed both claims for lack of standing and lack of subject matter jurisdiction.

## A

With regard to the WTPU claim, the district court concluded that the Coalition lacked standing to bring suit in federal court. We affirm the district court's dismissal for lack of standing because any injury suffered by the Coalition due to the EPA's failure to follow NEPA procedures could not be remedied when the complaint was filed.

[7] To establish standing to sue in federal court, a plaintiff must show that (1) the plaintiff has suffered an injury in fact, (2) the injury is traceable to the defendant, and (3) a favorable decision will redress the injury. *Bennett v. Spear*, 520 U.S. 154, 167 (1997). Fatal to the Coalition's WTPU claim is the third prong of the standing analysis: the Coalition cannot show that there is a genuine likelihood that its injury will be redressed if it succeeds on the merits. *See id.* The injuries allegedly suffered by the Coalition include health problems and a decrease in the enjoyment and value of their property. Missoula completed construction of the WTPU in October of 2004 and fully expended the $5 million EPA grant in the process. The Coalition's injuries cannot be redressed now that the WTPU is complete and the federal funds are expended. *See Gonzales v. Gorsuch*, 688 F.2d 1263, 1268 (9th Cir. 1982) (concluding that once the project was completed and the federal funds expended, the court could not bring about the water pollution planning sought by the plaintiff); *see also Friends of the Earth, Inc. v. Bergland*, 576 F.2d 1377, 1379 (9th Cir. 1978) ("Where the activities sought to be enjoined have already occurred, and the appellate courts cannot undo what

has already been done, the action is moot."). Requiring the EPA to produce an EA and EIS with regard to the WTPU would not redress any personal health or property injuries suffered by the Coalition members as a result of the construction. We hold that the Coalition lacks standing to bring its WTPU claim in federal court.

**B**

**[8]** With regard to the RSP claim, the district court concluded that it lacked subject matter jurisdiction to adjudicate the Coalition's claim. The United States must waive its sovereign immunity before a federal court may adjudicate a claim brought against a federal agency. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Here, because NEPA does not subject the EPA to suit, see 42 U.S.C. § 4321 *et seq.*, the Coalition has to establish waiver of immunity under the Administrative Procedure Act ("APA"). *See* 5 U.S.C. §§ 702, 704. The APA permits a citizen suit against an agency when an individual has suffered "a legal wrong because of agency action" or has been "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. When a claim is brought pursuant to the APA, the agency action must be "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704. An agency action is "final" when (1) the agency reaches the "consummation" of its decisionmaking process and (2) the action determines the "rights and obligations" of the parties or is one from which "legal consequences will flow." *Bennett*, 520 U.S. at 177-78.

The district court determined that Congress's appropriation of $500,000 for the completion of the RSP did not constitute final agency action. The district court reasoned that, regardless of the congressional appropriation and earmark, the Coalition's claim would not be ripe until after the EPA awards the money to Missoula.

**[9]** In its opening brief, the Coalition appeared to challenge the district court's dismissal for lack of subject matter jurisdiction by arguing that where Congress has earmarked federal funds for a particular project via an appropriations act, the funds should be considered dispersed and qualify as a final agency action under the APA. This contention is not supported by administrative law. First, Congress is excluded from the APA's definition of an agency. 5 U.S.C. § 701(b)(1)(a) (" 'agency' means each authority of the Government of the United States . . . , but does not include the Congress . . . ."). Therefore, Congress's appropriation of $500,000 to the EPA earmarked for the RSP does not constitute a final agency action under the APA. Second, the congressional appropriation to the EPA of funds for a particular project does not constitute a final agency action by the EPA until the EPA has reviewed a grant application and decided to disburse the funds. *See Karst Envtl. Educ. & Prot., Inc. v. U.S. Envtl. Prot. Agency*, 403 F. Supp. 2d 74, 81 (D.D.C. 2005) (concluding that there was no final agency action where HUD had yet to consider and approve a grant application for disbursal of appropriated funds because "the federal money is but an expectancy that has not yet materialized") (citation and internal quotation marks omitted), *aff'd*, No. 06-5059, 2007 U.S. App. LEXIS 1943 (D.C. Cir. Jan. 30, 2007); *Citizens Alert Regarding the Env't v. U.S. Envtl. Prot. Agency*, 259 F.Supp. 2d 9, 20 (D.D.C. 2003) ("The possibility that federal funding will be provided in the future is not sufficient to federalize a state project, even when such funding is likely.") (quoting *United States v. S. Fla. Water Mgmt. Dist.*, 28 F.3d 1563, 1573 (11th Cir. 1994)), *aff'd*, 102 F. App'x 167 (D.C. Cir. 2004). Even where, as here, Congress has specified the specific project to which funds should be allocated, the EPA does not take a final agency action until it completes its review of the grant application and decides to disburse the appropriated funds. Before disbursal of the funds, the EPA could decide to issue an EA and a FONSI or an EIS. Absent final agency action, there was no jurisdiction in the district court to review the NEPA claim.

**C**

**[10]** The Coalition further argues that the EPA's issuance of an EA and FONSI with regard to the MWFPU are final agency actions for purposes of judicial review. We have held that an agency's decision not to issue an EIS concludes the agency's procedural inquiry into the environmental impact of a proposed project and therefore constitutes a final agency action, regardless of whether the agency has decided to fund the project. *Friedman Bros. Inv. Co. v. Lewis*, 676 F.2d 1317, 1319 (9th Cir. 1982). Had the Coalition established standing, this argument would provide the district court with jurisdiction to hear the WTPU claim, but it does not establish subject matter jurisdiction with regard to the RSP claim. The EPA has specifically declined to accept the EA of the MWFPU for the RSP, and there is no indication in the record that the EPA has subsequently adopted an EA for the RSP. As a result, the EPA has not concluded its procedural inquiry into the environmental impact of the RSP, and the district court properly held that it lacked subject matter jurisdiction to hear the Coalition's RSP claim.

**D**

**[11]** Finally, the Coalition argues that dismissal of its RSP claim for lack of subject matter jurisdiction combined with dismissal of its WTPU claim for lack of standing means that in a case involving a major federal action, claimants will be barred from bringing suit against the EPA for violations of the procedural requirements of NEPA: On the one hand, if the claimants sue before the agency has made a final decision to disburse the funds, the suit will be dismissed for lack of subject matter jurisdiction. On the other hand, if filed after the disbursement, the suit will be dismissed because no relief provided by the court could redress the procedural violation. While the window for such claims may be narrow, a claimant can file suit and simultaneously seek a preliminary injunction as soon as the federal agency makes a final decision to award

the grant but before the funds are entirely disbursed by the federal agency. Here, for example, the EPA notified Missoula of its decision to award the $5 million grant on September 21, 1998 and informed Missoula of its final approval of the MWFPU for purposes of the grant on July 31, 2000, but did not begin to disburse the funds until November 29, 2000 and did not conclude disbursement until September 8, 2003, providing ample time for a claimant to file suit under NEPA. The APA applies to waive sovereign immunity only after final agency action. 5 U.S.C. § 704. Before final agency action has occurred, an action against the EPA for procedural violations of NEPA is premature and a federal court lacks subject matter jurisdiction to hear the claim.

## VI

[12] The district court also dismissed the Coalition's action against Missoula for lack of subject matter jurisdiction and lack of standing, and the Coalition appeals that dismissal.[2] "Usually, the federal government is the only proper defendant in an action to compel compliance with NEPA." *Laub*, 342 F.3d at 1091-92 (citation and internal quotation marks omitted). Where state and federal projects are not interrelated and do not constitute a single federal action under NEPA, nonfederal entities cannot be defendants in a NEPA suit. *See id.* Because we have held that the MWFPU is not a major federal action and the RSP is not a final agency action, Missoula is not a proper defendant and the district court did not err in dismissing the claims against Missoula for lack of subject matter jurisdiction.

---

[2]Missoula asked the district court to dismiss the Coalition's claim for (1) lack of jurisdiction, (2) failure to state a claim, (3) failure to join all necessary parties, (4) failure to exhaust all administrative remedies, (5) laches, and (6) lack of standing. The district court, however, dismissed the Coalition's claim only for lack of jurisdiction and lack of standing. Missoula did not appeal the district court's rejection of the alternate grounds for dismissal. We do not address the alternate grounds here.

**[13]** Likewise, the district court properly dismissed the claims against Missoula for lack of standing. NEPA requires *federal* agencies to prepare an EIS when there are major federal actions significantly affecting the quality of the human environment. 42 U.S.C. § 4321 *et seq.* A local government can prepare an EA, but the federal agency must adopt the EA in order for it to qualify as an agency's environmental review for purposes of NEPA. *Id.* Only the federal government, not the local government, can adopt the EA and EIS that the Coalition seeks as its relief. Therefore, no order issuing from the district court in a claim against Missoula could grant the relief requested by the Coalition: Missoula cannot issue an EIS on behalf of the EPA.

**AFFIRMED.**